IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THEODORE MATE
Spissstrasse 6
3920 Zermatt
Switzerland

Plaintiff

v. Case No. ______________________

JOHN KERRY, Secretary
United States Department of State
2201 C Street NW
Washington, DC 20520

and

EDWARD BETANCOURT, Director,
Office of Policy Review and Interagency
Liaison, Office of Overseas Citizens
Services, Bureau of Consular Affairs
U.S. Department of State
SA-29, 4th Floor
Washington, D.C. 20520

Also Serve:

Loretta Lynch, Attorney General
950 Pennsylvania Avenue
Washington, D.C. 20530-0001

United States Attorney for the
District of Columbia
555 4th Street NW
Washington, D.C. 20001
Attention: Civil Division

Defendants

Plaintiff Theodore Mate ("Mr. Mate"), by undersigned counsel, brings this Complaint for relief in the nature of mandamus against John Kerry, Secretary of State, *ex officio* ("Secretary Kerry") and Edward A. Betancourt, whose title is provided below, and, as reasons therefor, states as follows:

The Parties

1. Mr. Mate is a citizen and domiciliary of Switzerland. He was born in the United States in 1956, and hence under the operation of the Fourteenth Amendment to the United States Constitution was an American citizen from the time of his birth. He became a citizen of the Switzerland in December 2011, with the intention of expatriating and ceasing to continue to be a U.S. citizen. He has been unable to secure recognition of his expatriation from the United States Department of State ("DOS").

2. Secretary Kerry is the head of DOS, whose subordinate officials Edward A. Betancourt, Director, Office of Policy Review and Interagency Liaison, Office of Overseas Citizens Services, Bureau of Consular Affairs ("Mr. Betancourt") and Randy Townsend, Consul General at the U.S. Embassy in Bern, Switzerland ("Mr./Ms. Townsend"), have denied Mr. Mate recognition of his expatriation, and therefore refused to issue him a Certificate of Loss of Nationality of the United States ("CLN"). As head of the agency, he is legally designated to answer for the actions and rectify the errors and omissions of his subordinates.

3. Mr. Betancourt is the official charged with responding to Mr. Mate's appeal from the adverse decision by Mr./Ms. Townsend, who has delayed unconscionably to attend to his duty to rule upon that appeal.

Jurisdiction and Venue

4. This Court has subject-matter jurisdiction as this case arises under 28 U.S. Code § 1361, which establishes jurisdiction in district courts for actions in the nature of mandamus.

5. Costs and attorney's fees are also sought as forms of relief. This Court has subject-matter jurisdiction to award such relief under 28 U.S. Code § 2412.

6. This court has personal jurisdiction over Secretary Kerry pursuant to 28 U.S.C. § 1391(e), which is routinely construed to confer personal jurisdiction over federal officials in official capacity, where venue is proper, because Secretary Kerry is a federal official sued in official capacity, and a substantial part of the events or omissions giving rise to the claim occurred in this District. This Court has personal jurisdiction over Mr. Betancourt on identical bases. By virtue of filing this action, Mr. Mate is subject to the personal jurisdiction of this Court to the extent necessary to prosecute this action.

7. Venue is properly laid in this District pursuant to 28 U.S.C. § 1391(e) , because Secretary Kerry is a federal official sued in official capacity, Mr. Betancourt is a

federal official who has acted under color of legal authority, and a substantial part of the .events or omissions giving rise to the claim occurred in this District.

Facts

8. The facts recited below in Paragraphs 9-18 below are substantiated in the documents appended to Exhibit 1 to this Complaint, the letter of undersigned counsel to Mr. Betancourt dated August 28, 2013, and those documents are incorporated by reference as if fully set forth herein.

9. Mr. Mate moved from the United States to Switzerland in 1979, and has lived there continuously ever since. He moved to the town of Zermatt within the Canton of Valais in 1988, and became fully integrated into the life of the town of Zermatt within the Canton of Valais. Mr. Mate's integration into a Swiss community made him an appropriate candidate for Cantonal and Swiss citizenship.[1]

10. In the Spring of 2009 Mr. Mate therefore applied for Swiss citizenship on his own behalf as well as that of his wife and three children. His application was vetted, and he was required to engage in discussions with the local police and the local commission for naturalization, and as an act of discretion on their part and not by operation of law, they concluded that he should be offered citizenship.[2]

---

1 See Exhibit 1 at Page 7, Affidavit of Mr. Mate ¶¶ 1-4.

2 See Exhibit 1 at Page 8, Affidavit of Mr. Mate, ¶¶ 5-6; translated application Exhibit 1, Pages 12-14; letter of Zermatt Mayor Exhibit 1, Page 19.

11. Under Swiss law and procedure, Mr. Mate was therefore required, at the time that he naturalized, to swear an oath before a member of the cantonal parliament, in a form prescribed by law. He swore such an oath in December 2011, and became a Cantonal citizen and Swiss national. He was not required under Swiss law to relinquish his U.S. passport in order to receive Swiss citizenship.[3]

12. At the time that Mr. Mate applied for and received Swiss citizenship, and at the time that he took the required oath, it was his firm intention not only to acquire Swiss citizenship, but also to relinquish U.S. citizenship, notwithstanding that both Switzerland and the United States permit their nationals to be dual citizens. After taking the oath, it was his understanding he had relinquished U.S. citizenship.[4]

13. As of the Spring of 2012, Mr. Mate still had not been issued a Swiss passport, as this required a trip to another part of Switzerland that was not convenient for him to take. The only official Swiss paper he possessed was a Swiss ID card valid for travel throughout all of Europe. However on a trip to Turkey in May 2012 an entry visa was required in conjunction with a valid passport. He therefore used his unexpired U.S. passport, even though he no longer regarded himself as a U.S. citizen. He also used the

---

3 See Exhibit 1 at Page 8-9, Affidavit of Mr. Mate, ¶¶ 6-8; Pages 15-16, translations of oath.

4 See Exhibit 1 at Pages 9, 11, Affidavit of Mr. Mate, ¶¶ 8-9, 13.

passport for travel to the United States for the same reason, i.e. that the Swiss ID did not allow him access to the United States.[5]

14. In November of 2012 Mr. Mate finally obtained a Swiss passport. Since that time he has not used a U.S. passport for any reason.[6]

15. Subsequently, on June 10, 2013, he sent to the Consular Section of the U.S. Embassy in Bern, Switzerland, a letter demanding recognition of his expatriation, in the form of a CLN pursuant to 8 U.S. Code §§ 1481(a)(1) (obtaining naturalization in another country upon application and with the intention to relinquish U.S. citizenship) and (2) (taking an oath of allegiance to a foreign state with intention to relinquish U.S. citizenship).[7]

16. The American Citizen Services Section within the Embassy responded by requesting that Mr. Mate fill in a questionnaire and come in for an interview, the protocol that would be appropriate for expatriation by renunciation pursuant to 8 U.S. Code § 1481(a)(5), but not appropriate for obtaining a CLN pursuant to 8 U.S. Code §§ 1481(a)(1) or (2).[8]

---

5 See Exhibit 1 at Pages 9-19, Affidavit of Mr. Mate, ¶¶ 9-11.

6 See Exhibit 1 at Page 11, Affidavit of Mr. Mate, ¶ 12.

7 See Exhibit 1 at Pages 20-22, Letter of Mr. Mate.

8 See Exhibit 1 at Pages 23-27, Letter of American Citizen Services Section.

17. Mr. Mate responded with a letter to the Citizen Services Section demanding that his expatriation be recognized and that he be issued a CLN forthwith.[9]

18. Mr./Ms. Townsend responded in turn with a letter dated July 3, 2013 advising that since Mr. Mate had used his passport in May of 2012, he was deemed not to have lost his citizenship and hence would not be issued a CLN.[10] Mr. Betancourt also sent Mr. Mate a letter dated July 1, 2013 to the same effect.[11]

19. There is no statutorily-established mechanism for administrative review of denial of a CLN. However, DOS has established a protocol for such review within the Foreign Affairs Manual ("FAM"), the document that "comprise[s] the basic organizational directive of the Department of State." 1 FAM 011 Authority for Conducting Foreign Relations, 1 FAM 011. 7 FAM 1231 and 1232 set up a review process for denials of CLNs.

20. 7 FAM 1231(a) provides in part: "Persons held to have lost (or not lost) U.S. nationality by performance of acts made expatriating by statute have the right to request an administrative review of the finding as part of the due process of law guaranteed by the Fourteenth Amendment of the U.S. Constitution."

---

9 See Exhibit 1, Page 28, Letter of Mr. Mate.

10 See Exhibit 1, Page 29, Letter of Consul General.

11 See Exhibit 1, Page 30, Letter of Mr. Betancourt.

21. 7 FAM 1232 provides that review may be invoked by writing to Office of Legal Affairs (CA/OCS/L), Overseas Citizens Services, Bureau of Consular Affairs, U.S. Department of State ("the Bureau"). The writing is described in these terms: "a written request for an administrative review ... includ[ing] information regarding ... intention to relinquish U.S. citizenship at the time of the commission of the expatriating act and the voluntariness of the expatriating act..."

22. Through undersigned counsel, Mr. Mate directed a letter of appeal on August 28, 2013 to Mr. Betancourt, known to counsel to be the Director of the Bureau. That letter and its attachments is appended as Exhibit 1. This six-paged, single-spaced letter, accompanied by Mr. Mate's Affidavit and nine other documents establishing the facts summarized in Paragraphs 4-18 of this Complaint; those facts, together with those alleged elsewhere in this Complaint, establish that Mr. Mate is entitled to a CLN notwithstanding his use of an American passport after his expatriation.

23. On September 25, 2013, Mr. Betancourt responded to counsel posing seven questions or groups of questions concerning Mr. Mate's activities, particularly relating to his use of a passport while on his travels. Mr. Betancourt's letter is attached as Exhibit 2.

24. Those questions were fully answered by counsel in correspondence dated November 6, 2013. Counsel's letter is attached as Exhibit 3.

25. On February 6, 2014, counsel sent a letter to Mr. Betancourt inquiring as to the status of the appeal. Counsel's letter is attached as Exhibit 4.

26. On February 25, 2014, Mr. Betancourt responded, in relevant part: "Please be advised that this matter is very much under consideration. We hope to correspond further with you in the near future." Mr. Betancourt's letter is attached as Exhibit 5.

27. On April 22, 2014, Mr. Betancourt sent counsel a copy of State Department Form 4079, Request for Determination of Possible Loss of United States Citizenship, with a request that it be filled in. Mr. Betancourt stated: "Upon receipt of the completed form, the Department will be in a position to provide a definitive response with respect to Mr. Mate's citizenship status." Mr. Betancourt's letter is attached as Exhibit 6. That Form was returned, filled in, on May 16, 2014. The return of the form is attached as Exhibit 7.

28. From Mr. Betancourt's April 22, 2014 correspondence onward, there has been no further contact from Mr. Betancourt. Counsel wrote to Mr. Betancourt on September 3, 2014, and again on January 19, 2015, and again on May 14, 2015, almost the anniversary of Mr. Mate's fulfillment of all requests for documentation or information from Mr. Betancourt. Those letters are copied as Exhibits 8-10. In the latter correspondence, counsel warned Mr. Betancourt that Mr. Mate might be constrained to seek mandamus relief to compel some kind of administrative action. In the more than three months that have followed the warning letter, Mr. Betancourt has failed to communicate in any way. It has now been almost two years since Mr. Mate initially filed the appeal.

29. On July 30, 2015, undersigned counsel wrote to Mr. Betancourt, enclosing a draft of this Complaint, and warning that if there were no response within 30 days, Mr. Mate would file this action to compel a response. There has been no response, although more than 45 days have elapsed. Counsel's letter (without the attachment) is attached as Exhibit 11.

30. Mr. Mate has been gravely inconvenienced by the lengthy processing of his appeal. His status when he enters the United States is unclear, and his tax situation is also unclear. Moreover, should the determination be against him, he would likely seek judicial review of that determination, but he cannot seek that review unless and until Mr. Betancourt rules.

The Law

31. It is a maxim found in hundreds of cases that "justice delayed is justice denied."[12] See, e.g. *Ctr. For Int'l Envtl. Law v. Office of U.S. Trade Representative*, 240 F. Supp. 2d 21, 23 (D.D.C. 2003). Effectively, the delay caused by DOS' failure to rule on Mr. Mate's appeal constitutes a delay of such magnitude that it constitutes a denial of justice.

32. Mandamus exists to remedy such denials. Mandamus is available to compel the performance of a "ministerial duty" (though "not to direct the exercise of judgment or

---

[12] This aphorism has been attributed to British prime minister William Ewart Gladstone, https://en.wikipedia.org/wiki/Justice_delayed_is_justice_denied.

discretion in a particular way"). *Wilbur v. United States*, 281 U.S. 206, 218-19, 50 S.Ct. 320, 324 74 L.Ed. 809 (1930). "(A) duty or act is ministerial . . . when there is no room for the exercise of discretion, . . . the performance being required by direct and positive command of the law.' *Plato v. Roudebush*, 397 F. Supp. 1295, 1304-05 (D. Md. 1975), citing 52 Am.Jur.2d Mandamus § 80, at 403 (1970).

33. As the FAM itself notes in the language quoted in Paragraph 19 above, the duty to entertain appeals from denials of CLNs is of constitutional dimension. The duty may also be viewed as independently springing from 7 FAM 1231 and 1232, which establish the procedure. But it would be meaningless to say that DOS has a duty to entertain the appeals but no duty to rule upon them, or no duty to rule upon them within a reasonable time. Rather, the duty to entertain the appeals must imply a duty to rule within a reasonable time. Mr. Betancourt's correspondence of February 25, 2014 seems to acknowledge as much, promising action "in the near future."

34. For an appeal to consume most of two years is unreasonable. There is no longer any meaningful suggestion of an indication when DOS will actually rule on Mr. Mate's appeal. It is time to recognize that DOS has effectively flouted a non-discretionary duty owed to Mr. Mate.

WHEREFORE, Mr. Mate respectfully requests:

a. An order in the nature of mandamus compelling Secretary Kerry and his subordinate Edward Betancourt to rule upon Mr. Mate's appeal from the Department's

denial to Mr. Mate of a Certificate of Loss of Nationality within 30 days of the issuance of the Order;

b. Reasonable attorney's fees under the Equal Access to Justice Act;

c. The costs of this action; and

d. Such other and further relief as justice requires.

Jack L. B. Gohn
Bar No. 2823
Gohn Hankey Stichel & Berlage LLP
201 N. Charles St., Suite 2101
Baltimore, MD 21201
(410) 752-0412 (telephone)
(410) 752-2519 (telecopier)
jgohn@ghsllp.com
Counsel for Plaintiff Theodore Mate

0007590b.wpd